NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAHUL MATTA,<br><br>　　　　　　Plaintiff,<br>　v.<br>ANTER PREET KAUR, et al.<br>　　　　　　Defendants. | Civil Action No.: 24-5743<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court is the motion of defendants Anter Preet Kaur ("Anter"), Harinder Pal Singh ("Pal Singh"), Kamaljit Kaur ("Kaur"), Gurinder Singh ("Singh"), and Ana Piazzi Tavares ("Tavares") to dismiss (ECF No. 28) *pro se* Plaintiff Rahul Matta's First Amended Complaint (ECF No. 25, "FAC"). Also before the Court is the motion of defendant Elizabeth Locker ("Locker," and collectively with other defendants, "Defendants") to dismiss the FAC. ECF No. 36. Plaintiff opposed both motions (ECF Nos. 31, 37) and Defendants replied (ECF Nos. 32, 38). Plaintiff also filed sur-replies for both motions (ECF Nos. 33, 39). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendants' motions to dismiss are granted.

**I.　BACKGROUND**[1]

　　**A.　Factual History**

This matter arises out of discord relating to divorce proceedings between Plaintiff and Anter, Plaintiff's estranged wife. FAC ¶¶ 16–17. In May 2022, Plaintiff filed for a Temporary Restraining Order ("TRO") against Anter after "she physically assaulted him and threatened self-

---

[1] The following facts are accepted as true for the purposes of the motion to dismiss.

1

harm." FAC ¶ 23. Plaintiff alleges that in retaliation, Anter filed a "fabricated simple assault case" against Plaintiff. *Id.* Anter did so, Plaintiff asserts, to "undermine the TRO, damage Plaintiff's reputation, and gain leverage in the divorce proceedings." *Id.* ¶ 24.

In November 2022, Plaintiff alleges that Anter's attorney Locker "attempted to extort Plaintiff by offering to drop the false simple assault charge" in exchange for Plaintiff signing a statement "falsely admitting" to the allegations and agreeing to a civil restraining order. *Id.* ¶ 25. Plaintiff asserts that this was a "blatant act of coercion and legal intimidation" and that it was "not a settlement offer." *Id.* He did not concede in the face of this "extortion." *Id.* Anter subsequently withdrew her assault allegations after Plaintiff "presented evidence that would have irrefutably exposed her deceit." *Id.* This, he alleges, shows the "fraudulent nature of her claims." *Id.*

Then, from 2023 through 2024, Plaintiff asserts that Defendants "escalated their campaign of harassment, making repeated threats, filing false criminal charges, and obstructing Plaintiff's legal rights." *Id.* ¶ 26. First, Tavares, the girlfriend of Plaintiff's brother-in-law, and Kamaljit Kaur, Plaintiff's mother-in-law, "falsely" demanded $15,000 and $17,000, respectively, to withdraw "their fabricated legal claims." *Id.* ¶¶ 19–21, 26.a. In response to their "threat of continued legal action and reputational harm as leverage to coerce Plaintiff into an unjust resolution," Plaintiff engaged legal counsel and incurred "legal fees exceeding [$ TBD] and still ongoing." *Id.* ¶ 26.a. Plaintiff asserts that the demands showed attempted "coercion" as Defendants "pursued additional legal actions designed to increase pressure on Plaintiff." *Id.*

Second, Plaintiff alleges that Anter and Locker made false representations to U.S. Immigration authorities that he had engaged in unauthorized employment. *Id.* ¶ 26.b. He asserts that they did so with the intent of sabotaging Plaintiff's immigration petition. *Id.* Plaintiff characterizes this as obstruction of justice and "[i]mmigration [f]raud." *Id.* ¶¶ 26.b, 26.c.v. As a

result of these actions, Plaintiff faces legal uncertainty regarding his immigration status, which has caused him to suffer "prolonged emotional distress and legal expenses." *Id.*

Third, he asserts that Locker "actively obstructed discovery" in the divorce case by withholding "key financial records" from the equitable distribution process. *Id.* ¶ 26.c. Plaintiff incurred "significant legal fees and court costs" trying to rectify this "concealment." *Id.* Plaintiff acknowledges, however, that "there was no active discovery order at the time," but that the "deliberate concealment" was an "unlawful obstruction of [his] legal rights" which caused him financial harm. *Id.*

Fourth, Plaintiff alleges that Pal Singh, acting on behalf of Anter, filed a "false dowry case" in India in February 2024. *Id.* ¶ 27. This led local police in India to contact Plaintiff in April 2024 and instruct him to appear for an investigation. *Id.* ¶ 28. Additionally, Locker "used these false charges to draft fraudulent representations and communicate them" to U.S. immigration authorities. *Id.* ¶ 31.

Fifth, he asserts that Pal Singh and Kaur communicated threats to Plaintiff via WhatsApp, email, and phone calls with the intent to "coerce Plaintiff into withdrawing his legal motions in the divorce proceedings." *Id.* ¶ 30.

**B.     Procedural History**

The Court previously dismissed Plaintiff's original Complaint, which only asserted state law claims for intentional infliction of emotional distress, harassment, and civil conspiracy, for lack of subject matter jurisdiction. *See* ECF No. 23. Specifically, the Court found that diversity jurisdiction under 28 U.S.C. § 1332(a)(2) was lacking regardless of whether Plaintiff, a citizen of India residing in New Jersey, was a legal permanent resident of the United States. *See id.* at 4–5.

In his Amended Complaint, Plaintiff asserts eight claims, including new claims under federal law: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), FAC ¶¶ 35–46; (2) intentional infliction of emotional distress, *id.* ¶¶ 47–51; (3) harassment, *id.* ¶¶ 52–57; (4) malicious prosecution, *id.* ¶¶ 58–63; (5) civil conspiracy, *id.* ¶¶ 64–68; (6) fraudulent misrepresentation, *id.* ¶¶ 69–74; (7) violation of the Violence Against Women Act, 34 U.S.C. § 12361, *et seq.*, FAC ¶ 75; and (8) conspiracy to suppress discovery in a divorce case, *id.* ¶ 76. Defendants now move to dismiss for lack of subject matter jurisdiction and for failure to state a claim. ECF Nos. 28, 36.

## II.     LEGAL STANDARD

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). A claim is facially plausible when supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that contains "a formulaic recitation of the elements of a cause of action" supported by mere conclusory statements or offers "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (citation omitted). In evaluating the sufficiency of a complaint, the court accepts all factual allegations as true, draws all reasonable inferences in favor of the non-moving party, and disregards legal conclusions. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231–34 (3d Cir. 2008).

Courts must liberally construe pro se pleadings. *See Rivera v. Monko*, 37 F.4th 909, 914 (3d Cir. 2022). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

### III. DISCUSSION

#### A. Federal Claims

##### i. RICO

"To state a civil RICO claim, a plaintiff must allege the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Talley v. Pennsylvania Dep't of Corrs.*, No. 19-1589, 2019 WL 2866103, at *4 (E.D. Pa. July 2, 2019) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). To plead the "pattern" element, a plaintiff "must allege at least two predicate acts of racketeering." *Nelson v. Claussen*, No. 23-1896, 2024 WL 4249730, at *9 (D.N.J. Sept. 20, 2024). Additionally, a RICO plaintiff must show "RICO standing" by alleging (1) that he suffered an injury to business or property and (2) that this injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962. *Jersey Asparagus Farms, Inc. v. Rutgers Univ.*, 803 F. Supp. 2d 295, 316 (D.N.J. 2011) (citing *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000)).

Defendants raise several challenges to Plaintiff's RICO claim. They contend that Plaintiff has not plausibly alleged two predicate acts to constitute a pattern of racketeering activity, the existence of an enterprise, or an injury to "business or property." *See* ECF No. 28 at 7–11; ECF No. 36-1 at 11–13. Defendants also argue that RICO should not be used for a marital dispute. *See* ECF No. 28 at 7–8; ECF No. 36-1 at 11; *see also Bachi-Reffitt v. Reffitt*, 802 F. App'x 913, 916–17 (6th Cir. 2020) (noting that the court "found an almost unanimous belief among the courts presented with RICO claims" related to divorce proceedings that such disputes do not fit the mold of a RICO claim); *Cohen v. Cohen*, 993 F. Supp. 2d 414, 423 (S.D.N.Y. 2014) ("[D]omestic relations disputes are rarely the nebulae from which viable civil RICO claims coalesce. They tend to involve private concerns as opposed to matters of public importance."); *DeMauro v. DeMauro*,

5

115 F.3d 94, 99 (1st Cir. 1997) ("Divorces are frequently accompanied by disputes about property, including both interim and final allocations. Such state court authority would be threatened if civil RICO actions become the shadow proceeding for policing such disputes.").

Regardless of the propriety of a RICO claim in this context, Plaintiff's RICO claim fails because he has not plausibly pled at least two predicate acts of racketeering. *See Ottilio v. Valley Nat'l Bancorp*, No. 13-7154, 2014 WL 906138, at *2–3 (D.N.J. Mar. 7, 2014); *see also* 18 U.S.C. § 1961(5). Here, Plaintiff asserts that Defendants carried out four predicate acts: (1) extortion under 18 U.S.C. § 1951, (2) wire fraud under 18 U.S.C. § 1343, (3) obstruction of justice under 18 U.S.C. § 1503, and (4) "fraudulent misrepresentation" under 18 U.S.C. § 1341. FAC ¶ 40. Nevertheless, Plaintiff's allegations are insufficient to plead these predicates.

First, Plaintiff has not adequately alleged extortion under federal law. "Extortion" is defined as the "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Plaintiff does not allege that Defendants used force, violence, or fear to obtain his property. He asserts that Defendants threatened to file criminal charges and to "continue harassment" unless Plaintiff withdrew motions in the divorce case. FAC ¶ 40.a. Plaintiff does not show how Defendants would obtain his property by carrying out this threat. Further, Plaintiff's additional extortion allegations all concern litigation conduct, including the filing of a legal action in India, demands that he agree to a civil restraining order, and demands for sums of money to settle pending legal actions. *See* ¶¶ 25–27, 40.a.i. However, abusive litigation tactics, such as filing a baseless lawsuit and demanding a settlement, do not amount to a RICO predicate act of criminal extortion under federal law. *See Edelson PC v. Bandas Law Firm PC*, No. 16-11057, 2018 WL 723287, at *5 (N.D. Ill. Feb. 6, 2018) (collecting cases); *Kimberlin v. Nat'l Bloggers*

6

*Club*, No. 13-3059, 2015 WL 1242763, at *8 (D. Md. Mar. 17, 2015) (noting that "the mere act of filing a lawsuit and demanding a settlement agreement, however baseless the lawsuit or settlement demand may be, does not qualify as 'extortion' under" federal law). Therefore, Plaintiff has failed to plead extortion under 18 U.S.C. § 1951 as a predicate RICO act.

      Second, Plaintiff's allegations are insufficient to plead wire fraud. There are three elements to wire fraud: (1) a scheme to defraud, (2) use of the interstate wires to further that scheme, and (3) fraudulent intent. *Tridici Enoteca, LLC v. Dodge*, No. 20-4112, 2021 WL 3051916, at *3 (E.D. Pa. July 19, 2021) (citation omitted). Allegations of wire fraud as a RICO predicate must comply with Federal Rule of Civil Procedure 9(b). *Slimm v. Bank of Am. Corp.*, No. 12-5846, 2013 WL 1867035, at *21 (D.N.J. May 2, 2013). Rule 9(b) requires that Plaintiff state with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b). Although "'[m]alice, intent, knowledge and other conditions of mind of a person may be alleged generally,' a plaintiff is still required to provide factual allegations that support his legal theory." *New York Pipeline Mech. Contractors, LLC v. Sabema Plumbing & Heating Co., Inc.*, No. 10-148, 2012 WL 209349, at *3 (D.N.J. Jan. 24, 2012) (alteration in original) (citation omitted); *United States v. Neary*, No. 20-14167, 2021 WL 3732910, at *9 (D.N.J. Aug. 24, 2021) (emphasizing that under Rule 9(b), plaintiffs must still "plead the factual basis which gives rise to a strong inference of fraudulent intent" (quoting *United States v. Strock*, 982 F.3d 51, 66 (2d Cir. 2020))).

      Plaintiff has not met this standard. In the FAC, he merely recites the elements of wire fraud. *See* FAC ¶ 40.b ("Defendants used interstate and international communications . . . to further their scheme to defraud Plaintiff of his legal rights and extort money."). This description "skirts the kind of bare legal conclusions that will not pass the muster of" Rule 12(b)(6), let alone the particularity requirements of Rule 9(b). *Feinberg v. Eckelmeyer*, No. 09-1536, 2009 WL

4906376, at *7 (E.D. Pa. Dec. 16, 2009). Plaintiff's only purported factual support for his wire fraud predicate is his allegation that Tavares "falsely impl[ied] that Plaintiff was delaying legal proceedings and misrepresent[ed] legal obligations to pressure Plaintiff into payment." FAC ¶ 40.b.1. But averring that the statements were false or misrepresented facts, without more, does not show that there was an intent to defraud Plaintiff. *See Melone v. Cryoport Inc.*, No. 23-3243, 2024 WL 1743108, at *10 (D.N.J. Apr. 23, 2024) (rejecting under Rule 9(b) plaintiffs' assertion that defendants' "statements were fraudulent without any facts to explain why or how"). Thus, Plaintiff has failed to plead a wire fraud predicate with the required particularity.

Third, Plaintiff's "obstruction of justice" predicate fails. This predicate is based upon conduct in the underlying divorce proceeding as well as representations made by Anter and Locker to immigration authorities. *See* FAC ¶ 40.c ("Defendants obstructed the equitable distribution process in the divorce proceedings by withholding financial [and] other certification documents and filing false claims to gain an unfair advantage."); *id.* ¶ 26.c.v ("Defendants [Anter] and Locker further obstructed justice by knowingly transmitting false allegations to [the Department of Homeland Security] . . . ."). The Third Circuit has "never recognized obstruction of justice as a viable RICO predicate except in cases involving witness intimidation." *Biros v. Snyder*, No. 23-297, 2025 WL 964099, at *9 (W.D. Pa. Mar. 31, 2025) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 597 F. App'x 116, 126 (3d Cir. 2015)). Plaintiff's obstruction of justice predicate does not involve witness intimidation.

Even if the Third Circuit recognized other types of obstruction predicates, however, Plaintiff has not adequately pled such a claim. As to the conduct in the divorce case, fraudulent litigation activity cannot serve as a predicate offense for a civil RICO claim. *Applebaum v. Fabian*, No. 22-1049, 2022 WL 17090172, at *1 (3d Cir. Nov. 21, 2022) (collecting cases). As to the

information communicated to immigration authorities, Plaintiff has not provided any factual allegations to show that Defendants acted corruptly with the intent of influencing, obstructing, or impeding a proceeding in the due administration of justice, which is a required element of the offense. *See O'Brien v. United States Fed. Gov't*, No. 18-1787, 2018 WL 3649029, at *6 (E.D. Pa. July 31, 2018) (citing *United States v. Sussman*, 709 F.3d 155, 168 (3d Cir. 2013)); *Pelullo v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 00-5647, 2004 WL 1102782, at *20 (E.D. Pa. May 17, 2004). Therefore, Plaintiff has not adequately alleged obstruction of justice as a RICO predicate.

Fourth, Plaintiff has not plausibly pled his "fraudulent misrepresentation" predicate. Plaintiff's allegations of this predicate under 18 U.S.C. § 1341 (mail fraud) relate to information provided by Defendants Anter and Locker to U.S. immigration authorities. *See* FAC ¶¶ 26.b, 40.d. As with wire fraud, this predicate must be pled with particularity. *See JDM Grp., LLC v. Passaic Valley Water Comm'n*, No. 18-14028, 2019 WL 6606967, at *6 (D.N.J. Dec. 4, 2019). Again, Rule 9(b) requires Plaintiff to provide some factual support that Kaur and Locker had the requisite fraudulent intent. *See Woody Partners v. Maguire*, No. 19-2134, 2020 WL 2617043, at *17 (Bankr. W.D. Pa. May 22, 2020) (emphasizing that allegations that a defendant "must have known" a statement was false have been held as inadequate to withstand Rule 9(b)). Plaintiff asserts that Locker "knowingly submitted" false representations to immigration authorities "despite knowing or having a duty to know that the criminal charges in India were fabricated" and that Locker "intended to harm Plaintiff's immigration status and reputation." FAC ¶¶ 31, 40.d. Plaintiff also alleges that Anter, with Locker's assistance, "falsely represented" that Plaintiff engaged in unauthorized employment to sabotage his immigration petition. FAC ¶¶ 26.b. As with his wire fraud claims, Plaintiff's conclusory allegations that statements were false, without factual

9

support, are insufficient to show any fraudulent intent. *See Melone*, 2024 WL 1743108, at *10. Thus, he has not adequately pled this offense as a RICO predicate.

In sum, Plaintiff has not sufficiently pled any of the four asserted RICO predicates. As the FAC lacks two predicate acts to show a pattern of racketeering activity, the Court will dismiss this Count for failure to state a claim under RICO.[2]

        ii.    *Violence Against Women Act*

Plaintiff asserts a Violence Against Women Act ("VAWA") claim under 34 U.S.C. § 12361 in Count VII. The Supreme Court held that this provision, which had created a private right of action under the statute, is unconstitutional. *United States v. Morrison*, 529 U.S. 598, 627 (2000) (holding that Congress lacked the constitutional power under the Commerce Clause or Fourteenth Amendment to provide the private right of action under VAWA); *see also Malouf v. Benson*, No. 17-10941, 2018 WL 10155427, at *3 (D. Mass. Aug. 23, 2018) (noting that, following *Morrison*, VAWA "does not create a private right of action"). Accordingly, Plaintiff cannot bring a suit under this law and the Court will dismiss Count VII.

        iii.    *Alien Tort Statute*

Although Plaintiff does not explicitly raise a claim under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, he asserts that this law provides the Court with jurisdiction over the case. FAC ¶ 12. The ATS provides that "district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. The Supreme Court has stated that the "law of nations" is limited to "violation of safe conducts, infringement of the rights of ambassadors, and piracy." *Sosa v.*

---

[2] Plaintiff's failure to adequately plead a RICO claim in this context is unsurprising, given that "domestic relations disputes are rarely the nebulae from which viable civil RICO claims coalesce." *Cohen*, 993 F. Supp. 2d at 423.

*Alvarez-Machain*, 542 U.S. 692, 715 (2004).  Plaintiff asserts that "Defendants' actions constitute a violation of customary international law, including the prohibition against arbitrary detention and malicious prosecution, as recognized under the International Covenant on Civil and Political Rights (ICCPR)."  FAC ¶ 12.  But none of Plaintiff's allegations plausibly show a violation of the "law of nations" as defined in *Sosa*.  Further, the treaty invoked by Plaintiff, the ICCPR, does not "create obligations enforceable in the federal courts."  *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1247 (11th Cir. 2005) (quoting *Sosa*, 542 U.S. at 735); *see also M.C. v. Bianchi*, 782 F. Supp. 2d 127, n.1 (E.D. Pa. 2011) ("To be actionable under the ATS, a treaty must be self-executing," (citing *Sosa*, 542 U.S. at 734–35)).  Accordingly, the FAC does not establish a viable ATS claim.  The statute therefore does not provide a basis for the Court to exercise federal question jurisdiction.

        iv.     *Hobbs Act*

Plaintiff also asserts that "this Court retains jurisdiction under the Hobbs Act (18 U.S.C. § 1951) due to Defendants' extortionate demands for financial settlements."  FAC ¶ 13.  The Hobbs Act is a federal criminal statute and does not provide a private right of action.  *Cammarata v. Donnelly*, No. 24-1000, 2025 WL 96446, at *2 (D.N.J. Jan. 15, 2025); *see also, e.g.*, *Abcarian v. Levine*, 972 F.3d 1019, 1026–27 (9th Cir. 2020) (rejecting plaintiff's argument that the Hobbs Act created a private right of action); *Farrar v. McNesby*, No. 13-5683, 2015 WL 1383096, at *1 (E.D. Pa. Mar. 24, 2015) ("The Hobbs Act . . . does not permit a private right of action.").  Accordingly, this law does not provide the Court with federal question jurisdiction.

    **B.**    **Remaining State Law Claims**

        i.     *Diversity Jurisdiction*

11

Given that the Court will dismiss all potential federal claims asserted in the FAC, the Court will only have subject matter jurisdiction over the remaining state law claims[3] if diversity jurisdiction exists. Plaintiff alleges that he is a citizen of India residing in New Jersey. FAC ¶ 16. He also admits that "he is not a legal permanent resident or citizen of the United States." ECF No. 31 at 4. Plaintiff is therefore a foreign citizen for diversity purposes. *See, e.g.*, *Vilaythong v. Sterling Software, Inc.*, 353 F. Supp. 3d 87, 92 (D. Mass. 2018) ("A foreign citizen cannot be considered a United States citizen for diversity jurisdiction purposes unless that person has obtained a visa allowing him or her permanent residence."); *De La Cruz v. Virgin Islands Water & Power Auth.*, No. 07-9, 2010 WL 1484237, at *1 (D.V.I. Apr. 12, 2010) (noting that aliens not admitted for permanent residency are foreign citizens for the purposes of diversity jurisdiction). Because Plaintiff is a foreign citizen, the only basis for diversity jurisdiction is 28 U.S.C. § 1332(a)(2). *Laguerre v. People's Prop. Adjusters, LLC*, No. 19-1405, 2019 WL 4007769, at *3 (E.D. Pa. Aug. 22, 2019).

Section 1332(a)(2) provides for jurisdiction in suits between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). Diversity jurisdiction under 28 U.S.C. § 1332(a)(2), however, does not extend to cases where a foreign citizen appears opposite a foreign citizen who has obtained legal permanent residence in the United States. *See Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 126–27 (2d Cir. 2020) ("[B]ecause federal courts do not have diversity jurisdiction over lawsuits between two foreign parties, we conclude that section 1332(a)(2) does not give the district court jurisdiction over a suit by a permanent resident against a non-resident alien."); *Cavalieri v. Avior Airlines C.A.*, 25 F.4th 843, 848–49 (11th Cir. 2022)

---

[3] The state law claims are intentional infliction of emotional distress, harassment, malicious prosecution, civil conspiracy, fraudulent misrepresentation, and conspiracy to suppress discovery in a divorce case. FAC ¶¶ 47–74, 76.

("Under the current version of § 1332(a), a foreign citizen admitted to the United States for permanent residence is not a 'citizen[ ] of a State,' but rather a 'citizen[ ] or subject[ ] of a foreign state.'" (alterations in original) (quoting 28 U.S.C. § 1332(a)(2))); *DeLagarde v. Tours VI Ltd.*, No. 20-93, 2022 WL 595881, at *4 (D.V.I. Feb. 28, 2022) (citing *Tagger*, 951 F.3d at 127). Defendants Pal Singh and Kaur are both citizens of India and lawful permanent residents living in New Jersey. FAC ¶¶ 18–19. Thus, diversity jurisdiction under section 1332(a)(2) does not exist because a foreign citizen (Plaintiff) appears in this action opposite two foreign citizens with lawful permanent residency (Pal Singh and Kaur).[4] *See Tagger*, 951 F.3d at 126–27; *Cavalieri*, 25 F.4th at 848–49.

### ii. Supplemental Jurisdiction

Given that the Court has dismissed all potential federal claims and that diversity jurisdiction does not exist, the only way this Court can retain this case is if it exercises supplemental jurisdiction over the state law claims. But a district court "may decline to exercise supplemental jurisdiction [over state law claims] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "The decision to retain or decline jurisdiction over state-law claims is discretionary" and "should be based on considerations of judicial economy, convenience and fairness to the litigants." *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) (citations omitted).

---

[4] Plaintiff cites *Song v. Kim*, No. 93-19, 1993 WL 526340 (D.N.J. Dec. 16, 1993), *aff'd sub nom.*, *Choi v. Kim*, 50 F.3d 244 (3d Cir. 1995) to argue that lawful permanent residents are treated as citizens of their state of domicile for purposes of diversity. *See* ECF No. 33 at 2; ECF No. 37 at 3. This case interpreted an earlier version of the diversity statute, which stated that "an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." *Song*, 1993 WL 526340, at *3–4 (quoting 28 U.S.C. § 1332(a)). Congress amended the statute to remove this clause in 2011. *Tagger*, 951 F.3d at 126–27. As the diversity statute no longer contains the language cited in *Song*, this case does not control the outcome here.

Here, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. "The motion to dismiss stage is an 'early stage in the litigation,' and, therefore, 'dismissal of the pendent state claims in a federal forum will result in neither a waste of judicial resources nor prejudice to the parties.'" *Allstate N.J. Ins. Co. v. Summit Pharmacy, Inc.*, No. 13-5809, 2014 WL 1767528, at *13 (D.N.J. May 2, 2014) (quoting *Freund v. Florio*, 795 F. Supp. 702, 711 (D.N.J. 1992)). Given that the state law claims are more suitable for state court disposition, the Court declines supplemental jurisdiction. *Hardy v. Gloucester Cnty.*, No. 15-3714, 2017 WL 5001986, at *4 (D.N.J. Nov. 2, 2017) ("There is . . . a strong policy of allowing state courts to decide state matters.").

## IV.  CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are granted.

Accordingly, **IT IS** on this 23rd day of October, 2025;

**ORDERED** that Defendants' motions to dismiss (ECF Nos. 28, 36) are **GRANTED**; and it is further

**ORDERED** that Plaintiff's First Amended Complaint (ECF No. 25) is **DISMISSED** without prejudice; and it is further

**ORDERED** that Plaintiff shall have thirty (30) days from entry of this Opinion and Order to submit an amended complaint that addresses the deficiencies identified in this Opinion and Order. Insofar as Plaintiff submits a further amended complaint, he shall also provide a form of the amended complaint that indicates in what respect it differs from the current complaint, by bracketing or striking through materials to be deleted and underlining materials to be added. *See* L. Civ. R. 15(a)(2); and it is further

**ORDERED** that the Clerk's Office is directed to mark this case as **CLOSED**.

**SO ORDERED.**

*s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**